UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ISRAEL AEROSPACE INDUSTRIES, LTD.,

    Plaintiff,

  v.

AIRWELD, INC.,

    Defendant.
_____/

NO. CIV. 2:11-CV-00887-WBS-CKD

ORDER RE: MOTION FOR SUMMARY JUDGMENT

----oo0oo----

    Plaintiff Israel Aerospace Industries, Ltd. ("IAI"), brought this action against defendant Airweld, Inc., arising from defendant's alleged failure to deliver a customized aircraft part within a reasonable time. Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on its breach of contract claim.

I.  Factual and Procedural Background

In 2005, Romanian Aviation Company ("ROMAVIA") contacted Airweld, a California company that supplies aircraft parts, (Compl. ¶ 2 (Docket No. 1)), to inquire about purchasing a vapor cycle air conditioning ("VCAC") system, (Petty Decl. ¶ 4 (Docket No. 25)). A VCAC system provides cooling for designated areas of an aircraft. ROMAVIA expressed its intention to purchase a VCAC system for which Airweld holds a Supplemental Type Certificate ("STC"). (Id. ¶¶ 3, 6.) When a particular VCAC system is covered by a STC, it can be installed on an aircraft without any additional approval from the Federal Aviation Administration ("FAA"). (Def.'s Mem. in Opp'n to Mot. Summ. J. at 2:2-7 (Docket No. 24).)

Plaintiff IAI is an Israeli company that develops aerospace technology and provides manufacturing and maintenance services for both military and commercial aircraft. (Compl. ¶ 1 (Docket No. 1).) In 2007, ROMAVIA asked IAI to install a VCAC system in its Boeing 707 aircraft. (Id. ¶ 6.) ROMAVIA wanted IAI to purchase a standard VCAC system from Airweld, and have Airweld customize the VCAC unit to certain specifications. (Id. ¶ 8.) IAI contacted Airweld in 2007 on behalf of ROMAVIA to purchase the modified system. (Petty Decl. ¶ 7.) Thereafter, Airweld communicated with IAI, rather than ROMAVIA, about providing the VCAC system.

Later that year Airweld sent a technical representative to Israel to inspect the aircraft upon which the VCAC system was to be installed. (Id. ¶ 8.) Airweld advised against the modified system requested by IAI on behalf of

2

ROMAVIA because it would likely not provide the desired cooling for the designated areas of the aircraft. (Id.)  For this reason, Airweld requested a waiver acknowledging the fact of this possible shortcoming. (Id.)

Before the modified VCAC system could be installed on the aircraft, it needed to be approved by the FAA. (Stanzler Decl. Ex. C ("Petty Dep.") at 8:21-23 (Docket No. 19).)  This was because the customized VCAC system was not covered by Airweld's STC for the standard system. (DeMarchi Decl. ¶ 14 (Docket No. 26).)  Airweld notified IAI of this fact, and warned that the FAA approval process would be time consuming, especially given the specific modifications requested by IAI. (Petty Decl. ¶ 7.)  However, because IAI wished to proceed, Airweld informed IAI that it would obtain FAA approval for the modified system. (Stanzler Decl. Ex. D ("DeMarchi Dep.") at 12:15-17 (Docket No. 19).)

On February 6, 2008, Airweld finalized the order for the modified VCAC system, (Petty Decl. ¶ 17), when it received a waiver from Airweld acknowledging that the customized VCAC system would not provide the desired cooling, (id. ¶ 8).  Rich DeMarchi, Operations Manager for Airweld, made initial contact with the FAA on February 21, 2008, to begin the approval process. (DeMarchi Decl. ¶ 6.)  Airweld continued to respond to requests for information from the FAA after that point. (Id. ¶ 8.)

According to IAI, on February 7, 2008, it sent Airweld the total payment for the VCAC system, amounting to a total of $112,805, which included payment for the travel to Israel.

(Compl. ¶ 13.) Airweld disputes this date, and states that it received that sum by April 3, 2008. (DeMarchi Decl. ¶ 3.) It also disputes that it has received full payment under the contract because of estimated expenses incurred in procuring European Aviation Safety Authority ("EASA") certification for the modified system. (Answer ¶ 14.)

On December 2, 2010, IAI sent a letter to Airweld canceling their contract because Airweld had failed to deliver the VCAC system. (Stanzler Decl. Ex. F.) Despite this cancellation, IAI responded to Airweld's request for information needed by the FAA to continue the approval process on December 8, 2010. (DeMarchi Decl. ¶ 22.) Airweld asserts that it did not receive the cancellation letter until April 2011. (Id. ¶ 22.) Airweld never delivered a modified VCAC unit to IAI. (DeMarchi Dep. at 12:24-26.)

On April 1, 2011, plaintiff filed this action against defendant, asserting claims for breach of contract and rescission based on mutual mistake. Plaintiff now moves for summary judgment pursuant to Rule 56 as to its breach of contract claim.

II.   Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]  A material fact is one that could affect the

---

[1] Rule 56 was revised and rearranged effective December 1, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

4

outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id. Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The California Uniform Commercial Code ("Code") governs IAI's breach of contract claim. See Cal. Com. Code § 2102 (West 2002).[2] When the time for delivery is not expressly provided for in the contract, the Code provides a gap filler to designate the proper time. See Apex LLC v. Sharing World, Inc., 206 Cal. App. 4th 999, 1011 (3d Dist. 2012). Thus, if the parties do not otherwise agree, the time for delivery is "a

---

[2] IAI alleges in the Complaint that the contract between it and Airweld requires Israeli law to be applied to the present action. (Compl. ¶ 5.) However, IAI agrees that California law will apply for purposes of this motion. (Pl.'s Mem. in Supp. of Mot. Summ. J. at 4:3-4 (Docket No. 18).)

5

reasonable time."[3]  Cal. Com. Code § 2309(1).  What is a "reasonable time" "depends upon what constitutes acceptable commercial conduct in view of the nature, purpose and circumstances of the action to be taken."  Id. § 2309 cmt. 1.  The parties' course of dealing, course of performance, or trade usage can be used in the determination.  Id. § 1205 cmt. 2.  Ultimately, what constitutes a reasonable time under the circumstances is a question of fact.  See Blesi-Evans Co. v. W. Mech. Serv., Inc., No. Civ. 07-5061-KES, 2010 WL 1492844, at *8 (D.S.D. Apr. 13, 2010) ("[T]he question of what is a 'reasonable time' for shipment or delivery in this case is a question of fact properly left to the jury.").

Airweld does not dispute that it promised to deliver a VCAC system with FAA certification.  There is no evidence presented, however, to show that Airweld and IAI agreed to a specific time for delivery.[4]  Thus, both whether Airweld was in breach and whether IAI validly canceled the contract turns on whether Airweld's failure to deliver the VCAC system by

---

[3] There is a paucity of California case law on this particular provision of the Code. However, "[c]ase law from other jurisdictions applying California's Commercial Code, the Uniform Commercial Code (UCC), or the uniform code of other states, are considered good authority in litigation arising under the California act." Fariba v. Dealer Servs. Corp., 178 Cal. App. 4th 156, 166 n.3 (4th Dist. 2009).

[4] IAI alleges in the Complaint that "[t]he parties agreed that Airweld would deliver a conforming VCAC unit to IAI in a reasonable period of time when the VCAC unit could be installed in the aircraft." (Compl. ¶ 21.) However, IAI offers no evidence in support of this allegation. Airweld disputes that a "'reasonable period of time' was ever firmly established." (Answer ¶ 21.) Even if the parties did agree that the system would be delivered at a "reasonable time," the same question arises of what is a reasonable time under these particular circumstances.

6

December 2, 2010, was unreasonable.

IAI fails to provide a substantial explanation as to why a delivery period almost three years past the finalization of the contract is unreasonable, except to say that it is "patently" so. (Pl.'s Mem. in Supp. of Mot. Summ. J. at 1:28.) IAI does seem to suggest that Airweld was on notice that it was eager to receive the system. On February 18, 2010, IAI sent an email to Airweld notifying it that IAI had scheduled a new maintenance date for the airplane on which the system was to be installed and that it "must have the VCAC on or before this date." (DeMarchi Dep. at 28:6-9.) Airweld responded on February 24, 2010, that it had called and emailed the FAA to get an update.[5] (Id. at 29:2-8.) Although it is unclear whether Airweld responded to a May 4, 2010, email request for another update, (see id. at 29:10-21), it did send an email to IAI on December 9, 2010, requesting additional information to provide to the FAA, (DeMarchi Decl. Ex. I).

Airweld, in contrast, offers evidence of the parties' conduct to dispute that non-delivery by December 2010 was unreasonable. Airweld maintains that it told IAI from the onset of the project that the FAA approval process "would be time consuming." (Id. ¶ 14.) It informed IAI both before and after the order was finalized that the proposed deviation from the system for which it already had FAA approval would require

---

[5] IAI does not argue that this deadline constitutes a modification of the contract within the meaning of Code section 2209 and proffers no evidence that Airweld agreed to the new term. As such, the court does not consider whether it became part of the contract.

7

additional time.  (Id. ¶ 4.)  It also advised IAI that the customization it wanted "would not function sufficiently to cool all of the areas that IAI wanted to have cooled by the system." (Id. ¶ 11.)  Finally, Airweld never gave a tentative deadline, (id. ¶ 14), and IAI proffers no evidence that it received assurances that the approval process would be completed by a certain date.

Airweld also offers trade usage evidence to suggest that uncertainty is the norm in the FAA approval process. "Trade usage" "is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question.  The existence and scope of such a usage must be proved as facts."  Cal. Com. Code § 1303(c). Airweld states that "[t]here is no schedule published by the FAA that would enable anyone to determine how long the FAA may take when issuing an STC or an amendment to an existing STC." (DeMarchi Decl. ¶ 9.)  According to the Operations Manager of Airweld, he has known the approval process to take anywhere from six months to five years, depending on the project.[6]  (Id.) Airweld explained this unpredictability of the FAA timeline to IAI.  (Id. at ¶¶ 4, 14.)  The evidence offered by Airweld thus

---

[6] IAI objects to DeMarchi's estimation as mere speculation because DeMarchi has only "personally witnessed" the FAA process take two-and-a-half years.  (Pl.'s Reply to Opp'n to Mot. for Summ. J. at 5 n.6.)  However, DeMarchi clearly asserts that he is "aware of STC applications that have taken [five] years to obtain approval." (DeMarchi Decl. ¶ 9.)  For DeMarchi to assert that he is "aware" of such applications is to imply that he has personal knowledge of them, even though he was not personally involved with those particular application processes.  As such, the court overrules IAI's objection.

8

suggests that it would not have been unreasonable to still be awaiting FAA approval of the customized VCAC system in December 2010.

IAI's argument does not establish that its position, according to which Airweld's failure to deliver the FAA-approved unit by December 2010 amounted to breach of the contract and entitled IAI to cancel, is correct as a matter of law.[7] Indeed, each party offers conflicting evidence as to what would constitute a reasonable time for delivery under the contract at issue. Any inferences to be drawn from this conflicting evidence is reserved for a jury. Because there remains a genuine issue of material fact, the court must deny plaintiff's motion for summary judgment on its breach of contract claim.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, DENIED.

DATED: October 10, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[7] The court does not reach Airweld's defenses, including possible excuses for performance, because it has not found as a matter of law that Airweld's performance was due at the time IAI purported to cancel the contract.

9